IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CASE NO. 4:23-cv-101

| | |
|---|---|
| RYAN WINTER, as Administrator of the Estate of Maverick Wayne Winter,<br><br>Plaintiff,<br>v.<br><br>BLUEWATER ASSOCIATES OF EMERALD ISLE, INC., and 4601 OCEAN DRIVE, LLC,<br><br>Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

NOW COMES Plaintiff, by and through counsel, and files this Complaint seeking judgment against Defendant 4601 Ocean Drive, LLC ("Ocean Drive") and Defendant Bluewater Associates of Emerald Isle, Inc. ("Bluewater") (at times in this Complaint, Ocean Drive and Bluewater are referred to collectively as "Defendants") and in support thereof Plaintiff alleges as follows:

**Parties and Jurisdiction**

1. Ryan Winter ("Plaintiff") was the biological father and is the duly appointed Administrator of the Estate of his deceased son, Maverick Winter ("Maverick" or "Mav"), whose date of birth was January 10, 2019.

2. On January 24, 2023, Ryan Winter, a Colorado resident, was duly appointed the unrestricted authority as Personal Representative of the Estate of Maverick Winter by the Probate Registrar and Deputy Clerk of Court, El Paso County District Court, Colorado.

3. On April 20, 2023, Ryan Winter was duly appointed as the Ancillary Administrator of the Estate of Maverick Wayne Winter by the Clerk of Superior Court of Carteret County, North

1

Carolina, and issued Letters of Ancillary Administration pursuant to N.C. Gen. State §§ 28A-6-1; 28A-6-3; 28A-11-1; and 36C-2-209.

4. Ryan Winter's spouse, Ashley Winter, was the biological mother of her deceased son, Maverick Winter.

5. At the time of the filing of this Complaint and all relevant times thereto, Ryan and Ashley Winter were and are residents of El Paso County, Colorado Springs, Colorado.

6. On the date of the incident described herein and all other relevant times, Maverick Winter was a resident of his parent's household in El Paso County, Colorado.

7. Defendant 4601 Ocean Drive, LLC ("Ocean Drive") is a North Carolina limited liability company created for the purpose of owning and maintaining a residential vacation rental property located at 4601 Ocean Drive, Emerald Isle, Carteret County, North Carolina.

8. Defendant Ocean Drive's principal office address is 84 Wagon Wheel Trail, Meredith, New Hampshire, 03253. Defendant Ocean Drive's registered mailing address is 8204 Emerald Drive, Suite 5, Emerald Isle, North Carolina 28594.

9. Ocean Drive is a domestic North Carolina company and may be served through its registered agent for service of process in North Carolina, Michal Lincoln, at 8204 Emerald Drive, Suite 5, Emerald Isle, North Carolina 28594.

10. Defendant Bluewater Associates of Emerald Isle, Inc. ("Bluewater") is a domestic North Carolina corporation with a principal office address of 200 Mangrove Drive, Emerald Isle, North Carolina 28594-2515. Bluewater's principal office mailing address is PO Box 4340, Emerald Isle, North Carolina 28594.

11. Upon information and belief, Defendant Bluewater is engaged in the business of coastal vacation rental property management. Defendant Bluewater may be served through its

registered agent for service of process in North Carolina, Woodrow J. Warren, at 200 Mangrove Drive, Emerald Isle, North Carolina 28594.

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because a dispute exists between citizens of different States, and the matters in controversy exceed $75,000.00, exclusive of interest and costs.

13. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts and omissions giving rise to Plaintiff's claims occurred in this District, and Defendants had and maintain continuous and systematic contacts in this District, including the establishment and operation of their principal business offices.

**Factual Allegations**

14. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

15. 4601 Ocean Drive, sometimes referred to as "Grandview" by Defendants, is a 6-bedroom, 5-bathroom, oceanfront luxury vacation residential rental property located in the coastal community of Emerald Isle, North Carolina.

16. Emerald Isle, a North Carolina township located in Carteret County, is a popular beach vacation community that encourages families from all over the United States and beyond to visit the community for their vacations.

17. While having less than 4,000 permanent residents, during peak beach and tourism season, the town of Emerald Isle hosts over 50,000 residents.

18. The town of Emerald Isle is one of many beach communities that make up North Carolina's "Crystal Coast," an 85-mile stretch of coastal properties, beaches, seashore, historic sites, and state and national parks in Carteret County and North Carolina's Southern Outer Banks.

19. Defendant Bluewater is a vacation rental and management company that advertises itself as a "full-service property management" company that is "successfully managing over 900 vacation and annual rentals" that are "entrenched in many aspects of Carteret County tourism."

20. Defendant Bluewater markets and advertises to prospective customers by listing properties that it manages for vacation rental on the Crystal Coast.

21. Defendant Bluewater also markets and advertises its property management services to the owners of vacation rental properties throughout the Crystal Coast.

22. Defendant Bluewater also provides traditional real estate sales services for buyers and sellers of vacation properties on the Crystal Coast, and markets this service to prospective home buyers, investors, and owners of property in their operating area.

23. Upon information and belief, some time prior to September of 2021, Defendant Bluewater and Defendant Ocean Drive entered into an agreement for Defendant Bluewater to advertise, market, and provide vacation rental and property management services to the luxury vacation property at 4601 Ocean Drive, Emerald Isle, North Carolina.

24. Upon information and belief, Defendants entered into a written contractual agreement for the vacation rental and property management services that would be provided by Defendant Bluewater.

25. As part of its vacation rental and property management responsibilities pursuant to the agreement with Defendant Ocean Drive, Defendant Bluewater agreed to and did in fact advertise and market the Ocean Drive property on its website, www.bluewaternc.com.

26. Defendant Bluewater advertised and marketed the property in a detailed spec listing on its website, including photographs, descriptions of the amenities, testimonials of former renters, scenic location, and other detailed descriptions of the property.

4

27. Defendant Bluewater's vacation rental and property management listing for the Ocean Drive property included a prominent description of the in-ground pool and pool deck located on the property.

28. Prior to September 2021, Ryan and Ashley Winter had vacationed for many years on the Crystal Coast, specifically Emerald Isle, with their children and family members, traveling from their family home in Colorado Springs, Colorado for an annual beach vacation.

29. 2021 was no different than in years past for the Winter family. That year, Ashley Winter's aunt, Carole Acquesta, was attracted to Defendant Bluewater's website and the marketing of vacation rental homes offered, and proposed the 4601 Ocean Drive property to the rest of the family as a vacation rental for a week in late summer of 2021.

30. Attracted by the amenities advertised, which included an in-ground pool, jacuzzi, large outdoor deck and patio space, and ocean-front scenery, the family agreed and ultimately booked a week for a vacation at the property beginning on Sunday, September 5, 2021.

31. As in years past, the Winter's summer beach vacation also included their extended family members. Ashley and Ryan Winter's family at the time of the summer vacation consisted of both parents and their two boys, Cash Winter (age 4) and Maverick Winter (age 2).

32. Additional extended family members who would also participate in the vacation and stay at the Ocean Drive property included: John and Echo Ely Eldridge (Ashley's father and mother); Carole and Michael Acquesta (Ashley's aunt and uncle); and John and Sarah Eldridge IV (Ashley's brother and sister-in law).

33. Defendant Bluewater, at all relevant times herein, operated, managed, maintained and controlled the residential vacation operations at the Ocean Drive property, including but not

limited to the maintenance, repair and safekeeping of the various amenities available, including but not limited to the pool and the pool deck.

34. Defendant Bluewater is a "landlord or real estate broker engaged in the rental or management of residential property for vacation rental" as defined by N.C. Gen. Stat. §§ 42A-3 and 42A-4.

35. Defendant Bluewater agreed to deliver the Ocean Drive property to the vacation renters for the week of September 5, 2021 in a safe and working condition, free of dangerous defects and dangerous conditions, and in compliance with any and all regulatory and/or safety codes, safety regulations, and industry standards applicable to vacation rental homes in the state of North Carolina.

36. At all times relevant herein, Defendant Ocean Drive owned the property as described herein, and was responsible for the safety, maintenance, and upkeep of the premises, including but not limited to delivering the premises to vacation renters free of harmful or dangerous defects and conditions, and in compliance with any and all regulatory and/or safety codes, safety regulations, and industry standards applicable to vacation rental homes in the state of North Carolina.

37. Defendant Ocean Drive is a "landlord or real estate broker engaged in the rental or management of residential property for vacation rental" as defined by N.C. Gen. Stat. §§ 42A-3 and 42A-4.

38. In the early afternoon hours of September 5, 2021, the Winters and their extended family arrived at the 4601 Ocean Drive vacation rental for their family beach vacation.

39. The family members settled in and familiarized themselves with the layout of the property.

40. The "rear" of the Ocean Drive property reveals the three-story home's decks, pool, and ocean front amenities, and the rear of the property is what contains both the ocean view and the ocean access.

41. The third story contains a deck or balcony that extends off of bedrooms on the third floor of the house.

42. The second story contains a large deck that extends off of the kitchen on the second floor of the home. Access to this deck from the rear of the house is controlled by a gate at the top of a stairwell. At the bottom of the stairwell just described is a "boardwalk" that leads in two directions. One direction will take visitors along the boardwalk directly to the beach ("beach access boardwalk"). The other direction leads down a short flight of steps to a gate that provides access to the large swimming pool deck.

43. The pool deck on the property is surrounded by a white fence and contains the swimming pool, a jacuzzi, and an outdoor shower stall.

44. The pool deck has 3 "access points" or "gates."

45. The first access point, as just described, is at the entrance of the beach access boardwalk gate (the "southeast gate"), and the gate is controlled by a proper self-latching child lock system located above the top of the gate, known as a "top pull rod."

46. The second access point is a similar gate located on the West side of the property at ground level (the "west gate"). This gate is controlled by a proper self-latching child lock system located above the top of the gate, also known as a "top pull rod."

47. The third pool access point, however, is a gate located below the second-story deck stairs on the ground level of the house, immediately adjacent to a door to the house that leads to the bottom floor entertainment or recreational room (the "northeast gate"). On September 5, 2021,

this gate was not secured by a self-latching child lock system or "top pull rod." Unbeknownst to the Winter family, the gate just described was instead controlled by a simple latch with no lock. The latch on this gate was located beneath the top of the gate, on the exterior portion of the pool fence, and easily accessible to a small child.

48. As the Winters and their extended family familiarized themselves with the property on the afternoon of September 5, 2021, Maverick and his older brother Cash expressed a desire to go down to the beach to play. The two boys, accompanied by their grandmother, took the boardwalk access to the beach and began playing in the sand.

49. At the same time as described above, Ryan and Ashley Winter volunteered to go to the grocery store to purchase groceries and supplies for the week, and left the premises to do so.

50. As Maverick and his older brother played in the sand by the beach, Maverick got sand in his mouth and expressed a desire to go to the kitchen to rinse it out.

51. Maverick took the beach access boardwalk, as described above, to the stairs leading to the kitchen off the second story deck, as his grandmother looked on. At the top of the stairs, Maverick attempted to open the gate, but unbeknownst to him or any other members of the Winter family at the time, the gate was malfunctioning and would not open.

52. Upon information and belief, Maverick walked back down the stairs to gain access to the pool deck from the beach boardwalk (the southeast gate) but could not because it was controlled by a "top pull rod" child lock entirely out of his reach.

53. Maverick's height at the time of the incident described herein would have made it impossible for him to open the southeast gate "top pull rod" child lock.

8

54. Upon information and belief, after encountering the "top pull rod" child lock at the southeast gate, Maverick walked around the pool fence to the "northeast gate" access point as described above.

55. Arriving at the northeast gate, Maverick pushed the simple latch mechanism that was easily within his reach and opened the gate, providing access to the entire pool deck.

56. The simple latch mechanism on the southeast gate was not secured by any child safety locking device whatsoever at the time Maverick encountered it, allowing him easy access to the pool deck.

57. Upon information and belief, Maverick was gone approximately two minutes or less when his grandmother walked up the beach access boardwalk to check on his progress in the kitchen, where other family members had also been gathered at the time.

58. Maverick Winter was found by his grandmother unresponsive in the swimming pool.

59. Despite immediate lifesaving efforts by his grandmother and other family members, Maverick Winter suffered death by drowning.

60. Defendants knew that child access to open swimming pools is a well-known cause of serious injury and death in the vacation rental industry.

61. It is well known in the vacation rental industry, and by Defendants, that children ages 1 to 4 are the most susceptible to fatal drowning incidents involving swimming pools.

62. It is well known in the vacation rental industry, and by Defendants, that children ages 1 to 4 have a natural curiosity to explore, climb, and learn about the world around them, making child-proof access to swimming pools a life-or-death safety issue.

63. Defendant Bluewater actively markets its services as a property manager of vacation rental homes to families with small children.

64. Defendant Ocean Drive knew that its vacation rental property is routinely rented by families with small children.

65. Defendants knew or should have known that families with small children routinely vacation at the Ocean Drive property throughout the year.

66. Defendants knew or should have known that when properly gated, swimming pool access and drowning incidents by young children is entirely preventable if applicable building codes, safety standards, and industry standards are followed.

67. Defendants knew or should have known all applicable laws, regulations, codes, and practices used to prevent young children from accessing gated swimming pools on vacation rental property, and further knew that they had an obligation to comply with the same.

68. Defendants knew that the access gate to the pool deck below the second-story stairwell as described herein did not have a "top pull rod" child safety lock, but instead had a simple latch with no locking mechanism, placed at a height substantially below 54 inches and well within reach of small children, exposing them to a drowning hazard.

**First Claim for Relief**
**(Negligence and Negligence *per se* of all Defendants)**

69. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

70. Defendants Bluewater and Ocean Drive owed Plaintiff a duty to exercise reasonable care in maintaining a vacation rental premises free of dangers and hazards to small children, including Maverick Winter.

71. Defendants Bluewater and Ocean Drive are subject to the provisions of North Carolina's Vacation Rental Act, as codified by N.C. Gen. Stat. § 42A-1 *et seq.* ("The Act").

72. The Act provides statutory requirements for safety and transactional standards to owners and property managers in the vacation rental tourism industry.

73. Defendant Bluewater was under an affirmative statutory duty to "[o]ffer vacation rental property to the public for leasing in compliance with all applicable federal and State laws, regulations, and ethical duties[.]" N.C. Gen. Stat. § 42A-33.

74. Defendant Ocean Drive was under an affirmative statutory duty to "comply with all current applicable building and housing codes to the extent required by the operation of the codes," to "make all repairs and do whatever is reasonably necessary to put and keep the property in a fit and habitable condition" and to "keep all common areas of the property in safe condition." N.C. Gen. Stat. § 42A-31.

75. North Carolina law has adopted the codes and guidelines provided by the American National Standards Institute, National Spa & Pool Institute for Residential Inground Swimming Pools (herein "ANSI/NSPI-5").

76. North Carolina residential building codes applicable to swimming pools, swimming pool barriers, and swimming pool barrier gates are codified in part under Sections AV103 and AV105 of the Residential Code.

77. Section AV105.1 of the Residential Code provides that the provisions of that section "control the design of barriers for residential swimming pools, spas and hot tubs. **These design controls are intended to provide protection against potential drownings** and near drownings **by restricting access** to swimming pools, spas and hot tubs." (emphasis added).

78. Section AV105.2 of the Residential Code provides, in pertinent part, that "[a]n outdoor swimming pool . . . **shall be surrounded** by a barrier which shall comply with the following:

> 1. The top of the barrier shall be at least 48 inches (1219 mm) above *grade* measured on the side of the barrier which faces away from the swimming pool.
>
> 8. Access gates shall comply with the requirements of Section AV105.2, Items 1 through 7, and shall be equipped to accommodate a locking device. Where the release mechanism of the self-latching device is located less than 54 inches (1372 mm) from the bottom of the gate, the release mechanism and openings shall comply with the following:
> 8.1 The release mechanism shall be located on the pool side of the gate at least 3 inches (76 mm) below the top of the gate; and
> 8.2 The gate and barrier shall have no opening larger than ½ inch (12.7 mm) within 18 inches (457 mm) of the release mechanism.

(emphasis added).

79. In addition to North Carolina Residential Building Codes, the vacation rental industry has also adopted the American National Standards for Model Barrier Code for Residential Swimming Pools, Spas and Hot Tubs (herein "ANSI/APSP"), which has identical safety provisions to the code requirements outlined above.

80. Defendants, through their agents, servants, and/or employees, negligently, recklessly, willfully, and wantonly breached their duty of care to Plaintiff on September 5, 2021, at the Ocean Drive vacation rental home, in that they:

> a. Failed to inspect the premises for dangerous and/or defective access to the swimming pool;
>
> b. Failed to comply with building code requirements concerning the height of the necessary pool barriers;
>
> c. Failed to comply with building code requirements that the self-latching locking device on the pool entry gate be at least 54 inches from the bottom of the access gate;

12

d. Failed to comply with building code requirements that the release mechanism to a pool gate access have no larger than ½ inch openings within 18 inches of the release mechanism;

e. Failed to secure access to the pool deck as required by law and as known to the Defendants as a deadly hazard to young children;

f. Failed to follow ordinary principles of negligence when securing access to a pool deck so that young children cannot obtain access to the pool;

g. Failed to secure the northeast gate with a "top pull rod" child lock when it knew of the necessity of this device by virtue of the use of a "top pull rod" on the other two pool gates;

h. Failed to take the reasonable and necessary steps to secure access to a pool deck on a vacation rental property known by Defendants to regularly host families with young children;

i. Failed mandatory compliances as required by the North Carolina Vacation Rental Act;

j. Failed to adhere to the ANSI/NSPI-5 standards and practices for pool barrier safety;

k. Failed to adhere to the ANSI/APSP standards and practices for pool barrier safety;

l. Failed to place a secondary safety device on the latching mechanism of the northeast pool access gate such as a pad lock or other simple device that would have mitigated the defective latch mechanism and prevented access to the pool by young children;

m. In other ways to be shown through discovery and at trial.

81. The foregoing acts and omissions of Defendants that violated statutes, regulations, and building code requirements also constitute negligence *per se*.

82. The foregoing acts and omissions of Defendants were a direct and proximate result of the death of Maverick Winter by drowning.

## Second Claim for Relief
### (Gross Negligence and Punitive Damages)

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

84. The foregoing acts and omissions of Defendants constitute willful and wanton misconduct and gross negligence and show a reckless disregard for the rights and safety of others, including Maverick Winter.

85. Upon information and belief, Defendants Ocean Drive and Bluewater owned, maintained, marketed and rented the property with the full understanding that families with very young children routinely vacationed on the premises in response to the overtures and marketing of Defendants.

86. Defendants failures, as outlined above, with full knowledge of the dangers to children and the strict statutory requirements in place to mitigate those hazards, constitute such willful and wanton misconduct as to rise to the level of gross negligence above that of ordinary negligence.

87. Defendants' gross negligence and reckless misconduct were a direct and proximate cause of the death of Maverick Winter on September 5, 2021.

88. Due to Defendants' willful and wanton misconduct and gross negligence, the Estate of Maverick Winter is entitled to recover punitive damages from Defendants pursuant to Chapter 1D of the North Carolina General Statutes.

## Third Claim for Relief
### (*Res Ipsa Loquitor*)

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint as if full set forth herein.

90. At the time of the incident resulting in Maverick Winter's drowning death, the vacation rental home, and specifically the gate and locking mechanism employed on the northeast pool gate, was under Defendants exclusive possession and control.

91. The hazardous pool access resulting in Plaintiff's death is not the type of incident that ordinarily occurs in the absence of some negligent act or omission such as outlined herein.

92. The acts and omissions of Defendants proximately caused the drowning death to Maverick Winter and Defendants are liable under the doctrine of *Res Ipsa Loquitor*.

## **Damages**

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

94. As a result of the death of Maverick Winter, his estate and beneficiaries at law are entitled to recover damages under N.C. Gen. Stat. § 28A-18-2, including, but not limited to:

   a. Compensation for the pain and suffering of Maverick Winter;

   b. Reasonable medical expenses;

   c. Reasonable funeral expenses;

   d. The value of Maverick Winter's income, services, protection, care and assistance, society, companionship, comfort, guidance, kindly offices, and advice;

   e. Other damages as to be determined through discovery and as provided by law.

95. Plaintiff seeks compensatory damages in excess of $75,000.00.

96. Plaintiff seeks punitive damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq.*, due to the grossly negligent, reckless, willful and wanton misconduct of Defendants.

**Prayer For Relief**

WHEREFORE, Plaintiff prays unto the Court as follows:

a. That he recover judgment against Defendants in an amount in excess of $75,000.00 for compensatory damages under North Carolina law, including those damages enumerated under N.C. Gen. Stat. § 28A-18-2, as determined by a jury with interest and as allowed by law;

b. Judgement against Defendants for punitive damages in an amount in excess of $75,000.00;

c. The costs of this action be taxed against Defendants;

d. That a trial by jury be had on all issues so triable; and

e. For such further relief as this Court deems necessary, just, and proper.

This the 15th day of June, 2023.

/s/ Huntington M. Willis
H. Forest Horne, NCSB # 16678
Huntington M. Willis, NCSB # 46506
Martin & Jones, PLLC
4140 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 821-0005
Facsimile: (919) 863-6086
Email: hfh@m-j.com
       hmw@m-j.com
**ATTORNEYS FOR PLAINTIFF**